## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-22768-Civ-WILLIAMS/TORRES

CHARTER REALTY GROUP,

     Plaintiff,

v.

JAMES RIVER INSURANCE COMPANY,

     Defendant.

_____/

## REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS AND PLAINTIFF'S MOTION FOR CHOICE OF LAW DETERMINATION

This matter is before the Court on James River Insurance Company's ("Defendant" or "James River") motion to dismiss [D.E. 29] Charter Realty Group's ("Plaintiff" or "Charter") complaint [D.E. 1], and Plaintiff's motion for choice of law determination [D.E. 30]. Plaintiff responded to Defendant's motion to dismiss on August 21, 2020 [D.E. 36] to which Defendant replied on September 4, 2020 [D.E. 48]. Defendant responded to Plaintiff's motion for a choice of law determination on August 21, 2020 [D.E. 37] to which Plaintiff replied on September 4, 2020 [D.E. 47]. The matter is now fully briefed and ripe for disposition.[1] After careful consideration of the motions, responses, replies, relevant authority, and for the reasons discussed

---

[1]    The Honorable Judge Kathleen M. Williams referred the motions to the undersigned Magistrate Judge on August 25, 2020. [D.E. 38].

below, Defendant's motion [D.E. 29] should be **GRANTED** and Plaintiff's motion [D.E. 30] should be **DENIED**.  Charter's complaint [D.E. 1] should be dismissed without prejudice and with leave to amend.

## I.    BACKGROUND

The motions before us turn on the same question:  does California or Florida substantive law apply in determining if Defendant properly exhausted an insurance policy?  Before answering, we first provide the factual and procedural background of this action.

### A.    *Factual Background*

Charter is a California corporation, having its principal place of business in Los Angeles, California.  Charter served as the third-party management company for three multi-family apartment complexes in Miami-Dade County, Florida owned by Miami Property Group ("MPG").  James River, an Ohio corporation, issued a commercial general liability policy that covered liability for bodily injury at the Florida apartment complexes.  The policy was issued in California and Charter paid the premiums for the policy from its financial institution in Los Angeles.  Charter qualified as a co-insured under the policy as its status as MPG's real estate manager.  On July 11, 2007, Don Jenkins and Randon Travis were fatally shot at one of the apartment complexes in Miami Gardens, Florida (the "Property").

### B.    *Underlying Florida Action*

In 2009, personal representatives of the deceased ("Judgment Creditors") filed a wrongful death suit against MPG and Charter in the Eleventh Judicial Circuit in

and for Miami-Dade County, Florida ("Underlying Action").  James River defended MPG and Charter in the Underlying Action.  Trying to partially settle, counsel for the Judgment Creditors offered to release and dismiss the claims against MPG only in exchange for the remaining applicable limits of the insurance policy, $50,000. James River's joint defense counsel would not initially agree to the offer unless the Judgment Creditors also released Charter.  However, on March 14, 2013, each Judgment Creditor executed separate written settlement agreements and releases in favor or MPG only with James River paying each Judgment Creditor $25,000.  A few weeks later, James River denied coverage to Charter because the applicable limits of the policy had been exhausted by the settlement payments.

Regardless, James River continued to defend Charter in the Underlying Action.  The Judgment Creditors each eventually made statutory offers of $100,000 to Charter, but James River's defense counsel declined.  The Underlying Action thus proceeded to trial and on February 20, 2020, verdicts were rendered in favor of each Judgment Creditor against Charter in the aggregate amount of $519,000.  On May 1, 2020, the court in the Underlying Action entered judgment in the amount of the verdict and reserved jurisdiction to hear the Judgment Creditors' motion for attorneys' fees and costs based on the failure to accept the statutory offers.

### C.    *California Action*

Less than a week after the judgment was entered in the Underlying Action, Charter filed an action in the U.S. District Court for the Central District of California against James River for damages for breach of the implied covenant of good faith and

fair dealing.   James River moved to dismiss the California action or, in the alternative, to transfer the California action to the Southern District of Florida under 28 U.S.C. §§ 1406(a) or 1404(a).   On July 2, 2020, the California District Court granted James River's alternative motion, transferring the California action to the Southern District of Florida.

In its decision, the California District Court conducted a two-step § 1404 analysis: "(1) whether the district to which the moving party seeks to transfer meets the requirement of being one where the case 'might have been brought'; and (2) if it does, would transfer serve the interest of the convenience of parties and witnesses, and the 'interest of justice.'" [D.E. 19].  For the first step, the court found that neither party disputed that the case could have been originally brought in this District.  The Southern District of Florida is where the Property is located, where the events covered under the insurance policy took place, and where the Underlying Action was litigated.

At step two, the California District Court concluded that a transfer to this District would be proper.  In reaching this decision, the court considered Charter's choice of forum, the convenience of the parties and witnesses, and the interest of justice.   First, the court discussed that the only relevant fact that occurred in California is that the policy was "delivered and paid for" by Charter in California, which is not operative to the case.  Second, the court found that, on balance, Florida was more convenient to the parties because the parties' employees involved were in Florida, California and Virginia, and Virginia is closer to Florida than California.

The individuals in Virginia are employees of James River that were involved in the claims handling of the incident.  Third, the court found that the majority of witnesses were located in Florida, including the Judgment Creditors' counsel and James River's counsel for the Underlying Action.  Last, the court determined that

> [o]verall, the interests of justice also favor transferring this case to the Southern District of Florida. While Plaintiff is located in California, and the Policy at issue was delivered and paid for in California, all of the other actions relevant to this case occurred in Florida. Among other things, the Policy at issue insures Property located in Florida, the location of the shooting occurred in Florida, the citizenship of the decedents and their representatives is in Florida, all of the conduct giving rise to this action occurred in Florida, the underlying action was filed and litigated for 11 years in Florida, the settlement at issue occurred in Florida, and the attorneys involved in that settlement reside in Florida. The Court therefore concludes that the interests of justice favor transfer to the Souther[n] District of Florida.

*Id.*

As a result, the California District Court ordered the action to be transferred to the Southern District of Florida for the convenience of the parties and witnesses and in the interest of justice under 28 U.S.C. § 1404.  The court thus never addressed the question of which state's laws apply to Charter's claims nor did it rule on James River's motion to dismiss.

### D.     *Actions in the Southern District of Florida*

There are two actions pending in this District.  The first one is the transferred California action before us now, which was transferred to this District on July 6, 2020. [D.E. 20].  On July 31, 2020, James River moved to dismiss Charter's complaint.  [D.E. 29].  On the same day, Charter moved for a choice of law determination.  [D.E. 30]. The second action was initiated after the transferred California action by James River

filing its own complaint in the Southern District of Florida. That complaint seeks a declaration that James River is not liable to indemnify Charter and includes the Judgment Creditors as parties. Charter has moved to dismiss the James River's complaint pursuant to the "first-to-file rule."

## II.    LEGAL STANDARD

In ruling on a defendant's motion to dismiss, a court takes the allegations in the complaint as true and construes the allegations "in the light most favorable to the plaintiff[ ]." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008) (citing *Hoffman–Pugh v. Ramsey*, 312 F.3d 1222, 1225 (11th Cir. 2002)). "When considering a motion to dismiss, all facts set forth in [a plaintiff's] complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993)). A motion to dismiss under Rule 12(b)(6) "is granted only when the movant demonstrates that the complaint has failed to include 'enough facts to state a claim to relief that is plausible on its face.'" *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions . . . ." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted) (alteration in original). "To

6

survive a motion to dismiss, a complaint must contain sufficient factual matter." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557 (alteration in original). Factual content gives a claim facial plausibility. *Id.* "[A] court's duty to liberally construe a plaintiff's complaint in the face of a motion to dismiss is not the equivalent of a duty to re-write it for [a plaintiff]." *Peterson v. Atlanta Hous. Auth.*, 998 F.2d 904, 912 (11th Cir. 1993).

## III.   ANALYSIS

James River argues that Charter's complaint should be dismissed for two primary reasons. [D.E. 29]. First, it argues that the allegations in Charter's complaint are based entirely on the application of California law, but Florida law applies here. Second, James River argues the complaint must be dismissed because Charter has failed to add indispensable parties, namely the Judgment Creditors. James River therefore concludes that this action should be dismissed so Charter can bring its bad faith claim as a counterclaim to the action James River initiated in this District.

Both in Charter's choice of law motion and response to James River's motion to dismiss, Charter argues that California substantive law applies here. This is important because the application of California or Florida substantive law to this case would likely change the outcome. To the point, in Florida, when there are two insureds, "an insurer may exhaust policy limits by settling with one insured even if doing so leaves the other insured exposed, so long as these negotiations are conducted

in good faith." *Nova Cas. Co. v. OneBeacon Am. Ins. Co.*, 603 F. App'x 898, 901 (11th Cir. 2015); *see also Shin Crest PTE, Ltd. v. AIU Ins. Co.,* 605 F. Supp. 2d 1234, 1241 (M.D. Fla. 2009). By comparison, California law generally requires an insurer to only accept a settlement offer that releases all its insureds. *Madrigal v. Allstate Ins. Co.*, 215 F. Supp. 3d 870, 911-12 (C.D. Cal. 2016), *aff'd sub nom. Madrigal v. Allstate Indem. Co.*, 697 F. App'x 905 (9th Cir. 2017). If the insurer does otherwise under California law, it may breach its implied covenant of good faith and fair dealing. *See Strauss v. Farmers Ins. Exchange*, 26 Cal. App. 4th 1017, 1021-22 (Cal.1994). Because Florida and California law differ with respect to the dispositive issue in this case, we first decide which state's substantive law applies.

### A.    *California Choice of Laws Applies*

Before we can determine what state's substantive law applies, we must decide what state's choice of laws apply. When a defendant transfers venue under 28 § 1404(a), the change in venue will not alter the substantive law to be applied in the case. *See Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964); *see also Acme Circus Operating Co., Inc. v. Kuperstock*, 711 F.2d 1538, 1540 (11th Cir. 1983) (holding that "because this diversity action was transferred from the Central District of California to the Middle District of Florida, it was to apply the choice of laws principles on which the Central District of California would have relied). This way, a defendant seeking a transfer under § 1404(a) cannot effect a change in the applicable substantive law.

California's choice of laws thus applies here. This does not, however, lead to the conclusion that California substantive law applies to the issue in this action. *See*

*Acme Circus Operating Co.*, 711 F.2d at 1540.  Instead, we first apply California's choice of laws principles, which may dictate application of the substantive law of California or Florida.[2]

### B.   California's Governmental Interest Test

For disputes involving claims for breach of the implied covenant of good faith and fair dealing, California courts apply the governmental interest test to determine which state's law should apply.  *See Scottsdale Ins. Co. v. Dickstein Shapiro LLP*, 389 F. Supp. 3d 794, 840 (C.D. Cal. 2019).  The governmental interest analysis has three steps: "(1) the court first 'determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different;' (2) if the two sets of law are materially different, 'the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists;' (3) if there is a true conflict, the court 'carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law 'to determine which state's interest would be more impaired if its policy were

---

[2]     James River argues that an exception to *Van Dusen* is applicable to this action, but this argument lacks merit.  There is an exception to *Van Dusen* that applies when a transferee court lacks personal jurisdiction over a defendant.  *See Roofing & Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc.*, 689 F.2d 982, 991 (11th Cir. 1982) ("*Van Dusen* does not govern cases in which the transferor court lacked personal jurisdiction of the defendant.").  James River, however, fails to make any argument that the U.S. District Court for the Central District of California lacked personal jurisdiction over it.  Instead, James River attempts to expand the exception to cover any case where indispensable parties were not joined or the plaintiff chose a more favorable forum.  This is clearly not the law, and we are unpersuaded to make it so.

subordinated to the policy of the other state' . . . and then ultimately applies 'the law of the state whose interest would be the more impaired if its law were not applied.'" *Id.* at 841 (quoting *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 107-08 (Cal. 2006)). Because the parties rightfully agree that the substantive laws of California and Florida would likely lead to a different result in this action, we move to step two of the governmental interest analysis.

### 1. *Step Two of the Governmental Interest Test*

Step two requires the Court to examine whether each state has an interest in the outcome of the litigation. *See Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F. Supp. 2d 1183, 1201 (S.D. Cal. 2007). If we determine that only one state has an interest in having its law applied, we apply that state's law without having to engage in the third step of a comparative impairment analysis. *See Bernhard v. Harrah's Club*, 16 Cal. 3d 313, 317-18 (Cal. 1976).

California has an interest in having its law applied because Charter is a California corporation and California is the forum state. *See Costco Wholesale Corp.*, 472 F. Supp. 2d at 1201 ("As the forum state, California has an interest in applying its law to this case.") (citing *Rosenthal v. Fonda,* 862 F.2d 1398, 1402 (9th Cir. 1988)). Because Florida is where the Underlying Action was litigated, where the fatal shooting occurred, and where the settlement at issue was entered into, it has an interest in having its law applied. *See id.* ("California law acknowledges another state's interest in the application of that state's law where the events giving rise to litigation took place within that state's borders . . . the rule is similar for an insurance

10

coverage dispute.") (citing *Stonewall Surplus Lines v. Johnson Controls, Inc.*, 14 Cal. App. 4th 637, 648 (Cal. Ct. App. 1993)); *see also Medina v. Harco Nat'l Ins. Co.*, 2016 WL 7647680, at *8 (C.D. Cal. July 29, 2016) (finding that a state "has an interest in applying its laws to conduct that occurred in the state . . . ."). Having found that both states have an interest in applying its law to this action, we move to the final step of the governmental interest analysis, a comparative analysis.

### 2. *Step Three of the Governmental Interest Test*

In a comparative impairment analysis, courts look at many factors. Courts generally first examine "the relative commitment of the respective states to the laws involved and consider the history and current status of the states' laws and the function and purpose of those laws." *Washington Mut. Bank, FA v. Sup.Ct. (Briseno)*, 24 Cal. 4th 906, 920 (Cal. 2001). "A court is not supposed to pick the better rule: nonetheless, all other things equal, if one state's law "is archaic and isolated in the context of the laws of the federal union, it may not unreasonably have to yield to the more prevalent and progressive law[.]" *Costco Wholesale Corp.*, 472 F. Supp. 2d at 1198 (quoting *Offshore Rental Co., Inc. v. Cont'l Oil Co.*, 22 Cal. 3d 157, 165 (Cal. 1978)).

For California, its requirement that an insurer accept a settlement offer that releases all its insureds has been settled law since at least 1994. *See Strauss*, 26 Cal. App. 4th at 1021-22; *Lehto v. Allstate Ins. Co.*, 31 Cal. App. 4th 60, 72-73 (Cal. 1994) (declining to create liability for an insurer that refused to accept a settlement that did not release all insureds). In *Lehto*, the California court reasoned that the purpose

behind California's rule was twofold.  First, it prevents "the claimant [from] inject[ing] himself into the insurance relationship, and to direct the insurer to favor one insured over the other[,]" and  would thus not allow the claimant to "determine which insured would receive the full benefits of the insurance policy." *Lehto*, 31 Cal. App. 4th at 73.  Second, "sanctioning this power of the claimant would necessarily introduce the issue of the relative wealth of the insureds into the equation." *Id.*

For Florida, its rule allowing an insurer to settle without releasing all insureds has been used since *Contreras v. U.S. Security Ins. Co.* was decided in 2006.  *See* 927 So. 2d 16, 21 (Fla. 4th DCA 2006) ("The issue of whether an insurance company can be held liable for bad faith where there was a demand to settle with one insured but not release all insureds is a question of first impression in [Florida]."); *see also Nova Cas. Co.*, 603 F. App'x at 901.  *Contreras* involved the claimant's mother being killed while walking on the side of a road in a residential area by a drunk driver, Arnold Blair Dale, who fled the scene.  The vehicle driven by Dale was owned by Deana Dessanti and her insurer defended her and Dale.  *Contreras,* 927 So. 2d at 18.  When the claimant's attorney made a demand for the policy limits of $10,000, the insurer conditioned its acceptance on both Dale and Dessanti being released from liability.  *Id.* at 18-19.  The attorney objected and countered that he would only release Dessanti.  *Id.*  The insurer decided to decline the offer because it had a good faith obligation to both of its insureds.  *Id.*  The Florida court ultimately decided that the insurer could be held liable for bad faith arising out of its refusal to accept an offer for only Dessanti.

In reaching this decision, the court in *Contreras* put the focus on the actions of the insurer and not the claimant. *See id.* at 22 ("[T]he focus in a bad faith case is not on the actions of the claimant, but rather on those of the insurer in fulfilling its obligation to the insured."). The court further supported this decision because the claimant in *Contreras* adamantly refused to settle with Dale because of his egregious actions compared to Dessanti. Thus, the court reasoned that sometimes an insurer could act in good faith by accepting a settlement offer that does not release all parties. *See id.* The purpose of Florida's rule is thus to pinpoint the inquiry on whether the insurer acted in good faith in negotiating the settlement offer.

Although the California rule has been committed to its rule longer, the "current status" and "relative commitment" factors are basically neutral here because the Florida law is clearly settled in both state and federal courts. *See Glob. Hawk Ins. Copmany (RRG) v. Wesco Ins. Co.*, 2019 WL 6468579, at *7 (C.D. Cal. Aug. 29, 2019) (finding that these factors favored California only because the application of a law in Texas has a "burgeoning conflict between Texas federal courts' and Texas state courts' opinions"). Further, each state's law has a well-articulated purpose, so we also do not find this factor determinative. S*ee id.*

With these factors practically a wash, we next consider California's and Florida's contacts with the "parties, property, and underlying conduct." *See Medina*, 2016 WL 7647680, at *8 (C.D. Cal. July 29, 2016) (quoting *Costco Wholesale Corp.*, 472 F. Supp. 2d at 1198). In doing this, we look at the citizenship of the parties involved, the location of the insured risk, where the insurance policy was issued, and

what state the underlying action was litigated in and what state law it applied. *Compare Glob. Hawk Ins.*, 2019 WL 6468579, at *3-4 (applying California's rule because the truck driver that caused the accident and his employer were California citizens, the plaintiff's insurer was a California citizen, and the insurance policy was issued in California even though the accident occurred in Texas, the claimants were citizens of Texas, and the underlying action occurred in Texas) *with Medina*, 2016 WL 7647680, at *8 (applying California's rule when the accident occurred in California, the plaintiffs were California citizens, and the majority of the events in the underlying action occurred in California even though the insureds were Kansas residents and the policy was executed in Kansas).

However, in bad faith failure to settle claims, "the location of the insured risk should be given less weight in the choice of law analysis, and the location of the underlying litigation and the state whose laws were applied should bear heavier consideration." *Medina*, 2016 WL 7647680, at *9. Courts also consider the "reasonable expectations of the parties as to which state law would govern a dispute between them." *Glob. Hawk Ins.*, 2019 WL 6468579, at *7 (citing *Waggoner v. Snow, Becker, Kroll, Klaris & Krauss*, 991 F.2d 1501, 1507 (9th Cir. 1993)).

Here, several factors favor applying Florida's rule. The insured property is in Florida, the tragic shooting occurred in Florida, the settlement on behalf of MPG took place in Florida, the Judgment Creditors are citizens of Florida, and the Underlying Action was litigated in Florida. Critically, because Charter has brought a bad faith

14

failure to settle claim, we give more weight to the fact that the Underlying Action occurred in Florida and applied Florida law.

A few factors do favor applying California's rule; Charter is a citizen of California and the insurance policy was issued in California. Charter argues that these factors should be outcome determinative because the facts of this case are very similar to *Global Hawk*, where the court determined California law applied.[3] This argument misses the mark. In *Global Hawk*, the court only provided heavy weight to where the insurance policy was issued because the insured property was a truck that was insured in California. *See* 2019 WL 6468579, at *8 ("The [policy] insured several trucks [that] were intended to travel throughout the United States [thus] the location of the subject matter factor has little role in this analysis.") (internal quotations omitted). The court thus determined that it was reasonable for the insurer to expect that California law would apply and not one of the many different states the truck could have caused in accident in. *See id*.

In this case, the insurance policy only applies to bodily injury occurring at the apartment complexes located in Florida. These apartment complexes are not mobile; an accident at one of them could only have occurred in Florida. Because Charter's insured risk was exclusively limited to its decision to manage properties in Florida, Charter could have reasonably expected Florida law to apply to the insurance policy.

---

[3]   Charter also argues that *Robert McMullan & Son, Inc. v. United States Fid. & Guar. Co.*, 103 Cal. App. 3d 198, 201 (Ct. App. 1980) is relevant here. However, this case involved a contract damage suit and was decided well before California developed its current precedent that is relevant to this case.

*See id.*, at *7.  Moreover, the decision to apply California law in *Global Hawk* was also based on the fact that the Texas rule was not settled law.  That is not true with Florida's law.

In sum, Charter's claim is based on a bad faith settlement claim, so we must strongly consider that the Underlying Action was litigated in Florida and the settlement was struck in Florida.  Additionally, the fact that the insured property is permanently located in Florida is more important than the policy being issued in California because it was reasonable for the parties to expect that Florida would be the forum of any potential claim.  With these factors heavily favoring the application of Florida substantive law, and the other factors being neutral, we find that Florida substantive law should apply in this case.  Accordingly, Plaintiff's motion for a choice of law determination should be **DENIED**.

### C.    *Defendant's Motion to Dismiss*

Having found that Florida substantive law applies to this action, we turn to James River's motion to dismiss.  James River argues, that if Florida law applies, Charter's complaint must be dismissed under Rule 12(b)(6) for failing to state a cause of action because the allegations in the complaint are based entirely on the application of California law.  Indeed, Charter alleges "under California law, . . . where policy limits are insufficient to secure release of all insureds in a lawsuit, an insurer is prohibited from tendering policy limits on behalf of one insured without obtaining a release of all insureds."  [D.E. 1].  As discussed, this is not the law in Florida.  To the contrary, under Florida law, the inquiry is to determine if the insurer

negotiated in good faith to secure a settlement for all the insured parties.  *See Nova Cas. Co.*, 603 F. App'x at 901.

Charter's complaint only alleges that "James Rivers through its appointed joint defense counsel initially took the position with counsel for the Underlying Plaintiffs that James River would not agree to a settlement unless the Underlying Plaintiffs also agreed to release Charter."  [D.E. 1].  Because Charter fails to plead that James River failed to negotiate a settlement release for Charter in good faith, Charter has failed to state a cause of action under Florida law.  *See Dusek*, 832 F.3d 1243 at 1246.  Therefore, James River's motion to dismiss should be **GRANTED**.  However, Charter should be provided with leave to file an amended complaint based on Florida law.

## IV.   *CONCLUSION*

For the foregoing reasons, we **RECOMMEND** that Defendant's motion [D.E. 29] should be **GRANTED**, and Plaintiff's motion [D.E. 30] should be **DENIED**.  Charter's complaint [D.E. 1] should be dismissed without prejudice and with leave to amend.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the Honorable Judge Kathleen M. Williams.  Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's

Order based on any unobjected-to factual or legal conclusions included in the Report.  28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Comm'r of Soc. Sec.,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE  AND SUBMITTED** in  Chambers  at Miami,  Florida,  this 19th day of October, 2020.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge